UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BEAZLEY INSURANCE COMPANY, INC., <br><br> Plaintiff, <br><br> v. <br><br> FOSTER POULTRY FARMS and FOSTER FARMS LLC, <br><br> Defendants. | No. 1:21-cv-01806-JLT-SKO <br><br> ORDER RE: PLAINTIFF'S MOTION TO COMPEL <br><br> (Doc. 25) |

This matter is before the Court on Plaintiff Beazley Insurance Company, Inc. ("Beazley")'s motion to compel, filed November 18, 2022, which requests further responses to Beazley's Request for Production ("RFP") Nos. 9–12, 14, and 15, and Beazley's Request for Admission ("RFA") No. 14, that seek information about the settlement of Defendants Foster Poultry Farms and Foster Farms LLC (collectively, "Foster Farms") with its primary insurer (the "Motion to Compel"). (Doc. 25.) Beazley and Foster Farms filed a joint statement directed to the Motion to Compel, as required by this Court's Local Rule 251, on November 18, 2022, the same day the Motion to Compel was filed. (Doc. 25-1.) The Court reviewed the parties' papers and all supporting material, found the matter suitable for decision without oral argument, and vacated the hearing set for November 30, 2022. (*See* Doc. 29.)

Having considered the parties' briefing, and for the reasons set forth below, the Motion to Compel will be granted in part and denied in part.

## I. BACKGROUND

This is an insurance coverage dispute concerning an excess insurance policy that Beazley sold to Foster Farms (the "Beazley Excess Policy") and underlying lawsuits against Foster Farms and others that have been consolidated as *In re Broiler Chicken Antitrust Litigation*, Case No. 16-cv-08637 (N.D. Ill.) ("Underlying Actions").

The Beazley Excess Policy is excess above and generally follows a $10 million primary insurance policy sold by National Union Fire Insurance Company of Pittsburgh, PA ("AIG") to Foster Farms for the May 2016 to May 2017 policy period (the "Followed Policy"). (Doc. 1 ¶¶ 6, 9; Doc. 25-1 at 4.) AIG issued an additional primary policy to Foster Farms for the next year, May 2017 to May 2018 (the "Non-Followed Policy"). (Doc. 25-1 at 4.) Beazley does not insure Foster Farms in that policy period. (*Id*.)

In November 2016, AIG denied coverage for the Underlying Actions based on a policy exclusion of the Followed Policy. (Doc. 1 ¶ 15; Doc. 25-1 at 4, Exh. 2.) Beazley concurred and denied coverage for the same reason in February 2017. (Doc. 1 ¶ 15; Doc. 25-1 at 4, Exh. 3.) In May 2018, AIG sent a letter to Foster Farms withdrawing the denial of coverage based on the policy exclusion for some of the Underlying Actions and agreeing to pay defense costs for those Actions, while reserving the right to seek reimbursement of any amounts paid if the policy exclusion were to apply. (Doc. 1 ¶ 18; Doc. 25-1 at 5, Exh. 8.) Foster Farms responded to AIG in June 2018, asserting that it is entitled to all defense costs for all of the Underlying Actions under both the Followed Policy and the Non-Followed Policy. (Doc. 25-1 at 5–6, Ex. 5.) Approximately eight months later, AIG engaged in a confidential mediation with Foster Farms and, in April 2019, executed a written settlement agreement. (Doc. 25-1 at 6.)

In December 2021, Beazley filed a complaint seeking a judicial declaration that the Beazley Excess Policy affords no coverage for—and Beazley has no defense-related duty in connection with—the Underlying Actions due to the policy exclusion ("Count I"). (Doc. 1 ¶¶ 23–27.) Additionally, Beazley contends Foster Farms has not established that all underlying amounts have been properly exhausted under the Followed Policy and therefore there is no defense or indemnity obligation under the Beazley Excess Policy because such obligation

requires exhaustion ("Count II"). (*Id*. ¶¶ 28–32.)

Foster Farms filed a counterclaim in January 2022, asserting that the defense costs to date for the Underlying Actions have exceeded the limits of the Followed Policy and seeking a declaration that the Beazley Excess Policy obligates Beazley to provide a defense coverage or advance Foster Farms' defense costs for the Underlying Actions because the subject exclusion does not apply. (Doc. 8 ¶¶ 37–52.) Foster Farms further contends that Beazley has breached contractual obligations to advance defense costs and owes damages to Foster Farms, and that Beazley is liable for bad faith or breach of the implied covenant of good faith for, among other things, taking a position on coverage that Foster Farms contends differs from AIG. (*Id*. ¶¶ 53–70.)

## II.     LEGAL STANDARD

Federal Rule of Civil Procedure 26(b)(1) permits "discovery regarding any nonprivileged matter that is relevant to any party's claim or defense." Fed. R. Civ. P. 26(b)(1). Information within the scope of discovery "need not be admissible in evidence to be discoverable." *Id*. A "relevant matter" under Rule 26(b)(1) is any matter that "bears on, or that reasonably could lead to other matters that could bear on, any issue that is or may be in the case." *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351, (1978). Relevancy should be "construed 'liberally and with common sense' and discovery should be allowed unless the information sought has no conceivable bearing on the case." *Soto v. City of Concord*, 162 F.R.D. 603, 610 (N.D. Cal. 1995) (quoting *Miller v. Pancucci*, 141 F.R.D. 292, 296 (C.D. Cal. 1992)).

"The party seeking to compel discovery has the burden of establishing that its request satisfies the relevancy requirements of Rule 26(b)(1)." *Louisiana Pac. Corp. v. Money Mkt. 1 Institutional Inv. Dealer*, 285 F.R.D. 481, 485 (N.D. Cal. 2012) (citing *Soto*, 162 F.R.D. at 610)). In turn, the party opposing the discovery "has the burden of showing that discovery should not be allowed, and also has the burden of clarifying, explaining and supporting its objections with competent evidence." *Id*. (citing *DIRECTV, Inc. v. Trone*, 209 F.R.D. 455, 458 (C.D. Cal. 2002)). The Court is vested with broad discretion to manage discovery. *See Hunt v. County of Orange*, 672 F.3d 606, 616 (9th Cir. 2012); *Survivor Media, Inc. v. Survivor Prods*., 406 F.3d

625, 635 (9th Cir. 2005).

## III. DISCUSSION

**1. Beazley's Contentions**

Beazley moves to compel Foster Farms to produce documents regarding Foster Farms' settlement with AIG, including the written settlement agreement (RFP No. 9), all drafts of the settlement agreement (RFP No. 10), all communications between Foster Farms and AIG relating to the settlement and the mediation leading up to the settlement (RFP No. 11), documents concerning the "disputes underlying [the] settlement" (RFP No. 12), and information regarding how much AIG paid to Foster Farms under the Followed Policy (RFP No. 14) and the Non-Followed Policy (RFP No. 15). (Doc. 25; Doc. 25-1 at 7–11.) Beazley also seeks a response to its RFA No. 14, which asks that Foster Farms "[a]dmit that the written settlement agreement between you and [AIG] regarding insurance coverage disputes specific to the [Underlying Actions] expressly states that [AIG] has not admitted any liability." (Doc. 25; Doc. 25-1 at 11.)

Beazley contends that this information is relevant to Count II (and to its defense to Foster Farms' counterclaims) that Beazley has no defense or indemnity obligation under the Beazley Excess Policy in connection with the Underlying Actions because Foster Farms cannot prove that the $10 million limit of AIG's Followed Policy has been exhausted. (Doc. 25-1 at 12–14.) According to Beazley, the language of the Beazley Excess Policy, which provides that coverage attaches "only after all of the Underlying Limits have been exhausted through payments by, or on behalf of, or in place of the insurers of the Underlying Insurance of amounts covered under the Underlying Insurance," makes it necessary for Beazley to know "what has been actually paid, by whom, and under what circumstances in order to assess whether all of the Followed Policy's limits have been exhausted." (*Id*. at 13.)

Beazley also asserts that whether Foster Farms' settlement agreement with AIG provides that AIG does not admit liability is relevant to Foster Farms' bad faith counterclaim that Beazley's denial of coverage was "unreasonable" in view of AIG's "acknowledgement" that the policy exclusion does not apply to the Underlying Actions and its "agree[ment] that it had an obligation to provide defense costs to Foster [Farms]." (Doc. 25-1 at 15–16. *See also* Doc. 8 ¶¶

4

60, 61, 65; Doc. 11 ¶ 77.)

### 2. Foster Farms' Contentions

Foster Farms responds that the documents Beazley seeks in its RFPs are irrelevant because the attachment of the Beazley Excess Policy, and Beazley's coverage obligation thereunder, do not depend on actual payments by AIG of the $10 million Followed Policy limit. (Doc. 25-1 at 17.) Instead, according to Foster Farms, because the Beazley Excess Policy attaches even if payments were "by, or on behalf of, or in place of" AIG, the "only relevant question" is whether $10 million Followed Policy limit has been paid, regardless of whether AIG, Foster Farms, and/or others paid it. (*Id*. at 18.) To that end, Foster Farms has "agreed to provide documents to show" that defense costs in excess of $10 million incurred in the defense of the Underlying Actions have been paid. (*Id*. at 20.)

Regarding RFA No. 14, Foster Farms asserts that because it relies on its May 2018 letter, and not the settlement agreement, to support its counterclaim contention that AIG agreed it had an obligation to provide defense coverage, Beazley is not entitled to know whether the settlement agreement contains a "no-admission-of-liability clause" by AIG. (Doc. 25-1 at 18–19.)

Finally, Foster Farms argues that its "expectation in the confidentiality" of its settlement communications and the California mediation privilege, Cal. Evid. Code § 1119, protect the requested documents and information from disclosure. (Doc. 25-1 at 20–23.)

### 3. Analysis

To prevail on its Count II, Beazley must show that AIG's $10 million Followed Policy limit has not been exhausted. The issue of exhaustion is therefore a relevant matter subject to discovery under Rule 26(b)(1). *Oppenheimer Fund, Inc.*, 437 U.S. at 351. Per the Beazley Excess Policy, the Followed Policy is exhausted "through payments by, or on behalf of, or in place of the insurers of the Underlying Insurance of amounts covered under the Underlying Insurance." Accordingly, the settlement agreement between AIG and Foster Farms (RFP No. 9) and documents responsive to RFP No. 14, showing "payments by, or on behalf of, or in place of" AIG, are discoverable.[1] *See Home Ins. Co. v. Superior Court (ARCO)*, 46 Cal. App. 4th 1286,

---

[1] Contrary to Foster Farms' contentions, neither Rule 408 of the Federal Rules of Evidence nor the California

1291 (1996) ("[I]t cannot be seriously disputed that [a non-settling insurer] has the right to discover the amounts of the [insured's] settlements [with other defendants] and to have those amounts allocated."). *See also Teck Metals, Ltd. v. London Mkt. Ins.*, No. CV-05-411-LRS, 2010 WL 11507595, at *4 (E.D. Wash. Oct. 20, 2010) (settlements made by underlying insurers relevant to excess insurer's obligations). While Foster Farms has committed to producing evidence that it contends will establish exhaustion, the sufficiency of that evidence is not before the Court, as this is a discovery motion. *See, e.g., Yamagata Enterprises, Inc. v. Gulf Ins. Co.*, No. 2:07-cv-00644-HDM-GWF, 2008 WL 11388696, at *13 (D. Nev. Feb. 4, 2008) ("Refusing to permit the insured to obtain any discovery regarding other claims . . . prejudges the probative value of the evidence before it is even known.").

Beazley has not, however, met its burden of showing the relevance of all drafts of the settlement agreement (RFP No. 10), "all communications" between Foster Farms and AIG relating to the mediation and settlement (RFP No. 11), documents concerning the "disputes underlying [the] settlement" (RFP No. 12), and information regarding how much AIG paid to Foster Farms under the Non-Followed Policy (RFP No. 15). Beazley does not articulate how this information, in contrast to that already ordered to be produced under this Order, would be necessary to "assess whether all of the Followed Policy's limits have been exhausted" (Doc. 25-1 at 13). *See, e.g., Teck Metals, Ltd.*, 2010 WL 11507595, at *5 (denying motion to compel with respect to "pre and post settlement files, correspondence, documents and records leading up to any settlement").

Finally, Beazley is entitled to a response to RFA No. 14. Whether the settlement agreement contains a clause disavowing liability by AIG is directly relevant to Foster Farms' bad

---

mediation privilege, Cal. Evid. Code § 1119, precludes discovery of the settlement agreement. Rule 408 does not purport to limit discovery and is on its face not a discovery rule. *See Matsushita Elec. Indus. Co. v. Mediatek, Inc.*, No. C-05-3148MMC(JCS), 2007 WL 963975, at *3 (N.D. Cal. Mar. 30, 2007) ("The inescapable conclusion is that a privilege against disclosure cannot be found in Rule 408. To the contrary, because the Rule anticipates that settlement negotiations may be admissible, a privilege against their discovery would be inconsistent with Rule 26.") And a statutory exemption to the California mediation privilege provides for the disclosure of a written settlement agreement reached during mediation. *See* Cal. Evid. Code § 1123. *See also Arch Specialty Ins. Co. v. Univ. of S. California*, No. 2-19-cv-06964-DDP-ASx, 2022 WL 2342565, at *3 (C.D. Cal. June 29, 2022) ("[T]he court concludes that Section 1123 permits disclosure of the settlement agreement between USC and Chivaroli. The California mediation privilege does not otherwise apply.").

faith counterclaim alleging that Beazley's denial of coverage was "unreasonable" by comparison. That Foster Farms "has never relied" on the settlement agreement itself to support this allegation does not preclude Beazley's ability to discover the agreement in order to test that allegation.

### IV.　　CONCLUSION AND ORDER

For the reasons set forth above, the Motion to Compel (Doc. 25) is GRANTED IN PART and DENIED IN PART as follows:

1. Beazley's motion to compel responses to RFP Nos. 9 & 14 and to RFA No. 14 is GRANTED.  The parties are ORDERED to meet and confer to agree upon a reasonable time frame and manner for production of these documents and information; and

2. Beazley's motion to compel responses to RFP Nos. 10–12 & 15 is DENIED.

IT IS SO ORDERED.

Dated:   **November 30, 2022**　　　　　/s/ *Sheila K. Oberto*
　　　　　　　　　　　　　　　　　　　　UNITED STATES MAGISTRATE JUDGE