IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BEAZLEY INSURANCE COMPANY, INC., | § § § § |
| Plaintiff, | § § CIVIL ACTION NO. 1:21-cv-01806-LHR-SKO |
| v. | § § |
| FOSTER POULTRY FARMS, and FOSTER FARMS LLC, | § § § § |
| Defendants. | § § |

## MEMORANDUM AND OPINION

This is a dispute about whether Beazley Insurance Company, Inc., is obligated to pay defense costs arising from class action litigation alleging that Foster Poultry Farms and Foster Farms LLC (together, "Foster Farms") and other major chicken producers illegally fixed the price of broiler chickens.[1]  Beazley argues that it has no obligation to pay Foster Farms's defense costs under an excess liability insurance policy (the "Excess Policy") it issued to Foster Farms because: (1) the Excess Policy excludes coverage for antitrust claims; and, alternatively, (2) the limits of the primary policy issued by a third-party insurer have not been exhausted.  Based on the pleadings, the motions, the briefs, the arguments of counsel, and the applicable law, the court concludes that Beazley has no obligation to pay Foster Farms's defense costs because the antitrust exclusion applies to all claims in the underlying litigation and, alternatively, the primary insurance policy has not been exhausted.  Summary judgment is granted in favor of Beazley.

---

[1] Broiler chickens are "chickens raised for meat consumption to be slaughtered before the age of 13 weeks, and which may be sold in a variety of forms, including fresh or frozen, raw or cooked, or whole or in parts." (Docket Entry No. 41-1 at ¶ 1).

I.    Background

    A.    *In re Broiler Chicken*

In 2016, several actions were filed against Foster Farms and other major chicken producers in the United States District Court for the Northern District of Illinois. (Docket Entry No. 41-1 at 2–623). The actions were consolidated into *In re Broiler Chicken Antitrust Litigation*, Case No. 16-cv-08637 ("*In re Broiler Chicken*"). (*Id.* at 629).

The plaintiffs comprise four distinct groups: (1) a class of direct purchasers of broiler chickens; (2) a class of indirect purchasers who sold broiler chickens; (3) a class of individuals who purchased broiler chickens; and (4) over eight dozen direct-action plaintiffs who filed their own complaints. (Docket Entry No. 38-1 at ¶ 5). The plaintiffs all allege that Foster Farms and other chicken producers conspired to "fix and raise prices of broiler chickens," (Docket Entry No. 41-1 at ¶ 1); that the price-fixing conspiracy has had the "principal purpose and effect" of "reduc[ing] the supply of Broilers, eliminat[ing] competition, and increas[ing] the price of Broilers purchased by consumers at retail," (*id.* at ¶ 2); and that the chicken producers made "numerous misleading public statements" to conceal their conspiracy. (Docket Entry No. 41-1 at 396).

The plaintiffs assert the following causes of action: (1) violations of Section 1 of the Sherman Act, 15 U.S.C. § 1; (2) violations of various state antitrust laws[2]; (3) violations of various

---

[2] These state causes of action include:

Arizona's Uniform State Antitrust Act, Ariz. Rev. Stat. § 44-1401, *et seq.*; Arkansas Unfair Practices Act, Ark. Code Ann. § 4-75-201, *et seq.* and § 4-75-301, *et seq.*; California's Cartwright Act, Cal. Bus. & Prof. Code, §§ 16700, *et seq.*; District of Columbia Antitrust Act, D.C. Code §§ 28-4501, *et seq.*; Illinois Antitrust Act, 740 Ill. Comp. Stat. Ann. 10/3(1), *et seq.*; Iowa Competition Law, Iowa Code § 553.1, *et seq.*; Kansas Restraint of Trade Act, Kan. Stat. Ann. § 55-101, *et seq.*; Maine's Antitrust Statute, Me. Rev. Stat. Ann. Tit. 10 § 1101, *et seq.*; Michigan Antitrust Reform Act, Mich. Comp. Laws §§ 445.771, *et seq.*; Minnesota Antitrust Law, Minn. Stat. § 325D.49, *et seq.*; Mississippi Antitrust Statute, Miss. Code Ann. § 75-21-1, *et seq.*; Nebraska Junkin Act, Neb. Rev. Stat. § 59-801, *et seq.*; Nevada Unfair Trade Practices Act, Nev. Rev. Stat. § 598A.010, *et seq.*; New Hampshire's Antitrust Statute, N.H. Rev. Stat. Ann. Tit. XXXI, § 356, *et seq.*; New York General Business Laws § 340, *et seq.*; New Mexico Antitrust Act, N.M. Stat. Ann. §§ 57-1-1, *et seq.*; North Carolina General Statutes § 75-1, *et seq.*; North Dakota Uniform State Antitrust Act,

state consumer protection and unfair competition laws[3]; and (4) unjust enrichment "by the receipt of unlawfully inflated prices and unlawful profits of Broilers." (Docket Entry No. 41-1 at 2–621).

**B.     The AIG "Followed Policy"**

In 2016, Foster Farms purchased a liability insurance policy (the "Followed Policy") from National Union Fire Insurance Company of Pittsburgh, PA ("AIG"). (Docket Entry No. 40 at ¶ 5). The policy period of the Followed Policy was May 7, 2016, to May 7, 2017. (Docket Entry No. 40-1 at 13).

The Followed Policy provides director and officer coverage for "Loss of the Company arising from a . . . Claim made against the Company . . . for any Wrongful Act," including "advance Defense Costs of such Claim prior to its final disposition." (Docket Entry No. 40 at ¶ 8). The

---

N.D. Cent. Code § 51-08.1, *et seq.*; Oregon Antitrust Law, Or. Rev. Stat. § 646.705, *et seq.*; Rhode Island Antitrust Act, R.I. Gen. Laws § 6-36-1, *et seq.*; South Dakota Antitrust Statute, S.D. Codified Laws § 37-1-3.1, *et seq.*; Tennessee Code §§ 47-25-101, *et seq.*; Utah Antitrust Act, Utah Code. Ann. §§ 76-10-911, *et seq.*; Vermont Stat. Ann. 9 §§ 2453, *et seq.*; West Virginia Antitrust Act, W. Va. Code § 47-18-1, *et seq.*; Wisconsin Antitrust Act, Wis. Stat. Ann. § 133.01, *et seq.*  (Docket Entry No. 41-1 at 119–30, 329–505).

[3]  These state causes of action include:

The Arkansas Deceptive Trade Practices Act, Ark. Code Ann. § 4-88-101, *et seq.*; California's Unfair Competition Law, Cal. Bus. & Prof. Code § 17200, *et seq.*; the District of Columbia Consumer Protection Procedures Act, D.C. Code § 28-3901, *et seq.*; the Florida Deceptive and Unfair Trade Practices Act, Fla. Stat. § 501.201(2), *et seq.*; the Michigan Consumer Protection Act, Mich. Comp. Laws Ann. § 445.901, *et seq.*; the Minnesota Consumer Fraud Act, Minn. Stat. § 325F.68, *et seq.*; the Missouri Merchandizing Practices Act, Mo. Ann. Stat. § 407.010, *et seq.*; the Nebraska Consumer Protection Act, Neb. Rev. Stat. § 59-1602, *et seq.*; the Nevada Deceptive Trade Practices Act, Nev. Rev. Stat. § 598.0903, *et seq.*; the New Hampshire Consumer Protection Act, N.H. Rev. Stat. Ann. Tit. XXXI, § 358-A, *et seq.*; the New Mexico Unfair Practices Act, N.M. Stat. Ann. §§ 57-12-3, *et seq.*; the North Carolina Unfair Trade and Business Practices Act, N.C. Gen. Stat. § 75-1.1, *et seq.*; the North Dakota Unfair Trade Practices Law, N.D. Cent. Code § 51-10, *et seq.*; the Oregon Unlawful Trade Practices Act, Or. Rev. Stat. § 646.605, *et seq.*; the Rhode Island Deceptive Trade Practices Act, R.I. Gen. Laws § 6-13.1-1, *et seq.*; the South Dakota Deceptive Trade Practices and Unfair Consumer Protection Law, S.D. Codified Laws § 37-24, *et seq.*; the Utah Consumer Sales Practices Act, Utah Code Ann. §§ 13-11-1, *et seq.*; the Utah Unfair Practices Act, Utah Code All. §§ 13-5-1, *et seq.*; the Vermont Consumer Fraud Act, Vt. Stat. Ann. Tit. 9, §§ 2453, *et seq.*. (Docket Entry No. 41-1 at 264–87).

coverage has a $10M limit of liability and a $500,000 retention amount. (*Id.* at ¶¶ 5, 12). AIG's duty under the Followed Policy is to advance defense costs. (*Id.*).

The director and officer coverage is subject to the following "antitrust exclusion":

> The Insurer shall not be liable to make any payment for Loss in connection with any Claim made against an Insured:
>
> …
>
> for any actual or alleged violation of any law, whether statutory, regulatory or common law, respecting any of the following activities: antitrust, business competition, unfair trade practices or tortious interference in another's business or contractual relationships[.]

(*Id.* at ¶ 10).

The Followed Policy conditions AIG's duty to advance defense costs on AIG's "prior written consent":

> [T]he Insured shall not admit or assume any liability, enter into any settlement agreement, stipulate to any judgment, or incur any Defense Costs without the prior written consent of the Insurer. If the Insured admits or assumes any liability in connection with any Claim without the consent of the Insurer, then the Insurer shall not have any obligation to pay Loss with respect to such Claim. Only those … Defense Costs which have been consented to by the Insurer shall be recoverable as Loss under the terms of this D&O Coverage Section. The Insurer shall not unreasonably withhold any consent required under this D&O Coverage Section, provided that … in all events the Insurer may withhold consent to any … Defense Costs, or any portion thereof, to the extent such Loss is not covered under the terms of this D&O Coverage Section.

(Docket Entry No. 57 at ¶ 9).

### C.    The Beazley "Excess Policy"

Foster Farms purchased an excess liability policy (the "Excess Policy") from Beazley with the same policy period as the Followed Policy. (Docket Entry No. 40 at ¶ 1). The Excess Policy provides coverage "in accordance with all of the terms and conditions and limitations including but not limited to the exclusions and notice requirements of the Followed Policy except for the Limit of Liability, the premium or as otherwise set forth herein." (*Id.* at ¶ 2). However, coverage under the Excess Policy attaches "only after all of the Underlying Limits have been exhausted

through payments by, or on behalf of, or in place of the insurers of the Underlying Insurance [*i.e.*, the Followed Policy] of amounts covered under the Underlying Insurance."  (*Id.* at ¶¶ 2–4).

### D. Notice to the Insurers of *In re Broiler Chicken*

In September 2016, Foster Farms gave AIG and Beazley notice that the first *In re Broiler Chicken* class action complaints had been filed against Foster Farms LLC.  (*Id.* at ¶ 14).  Beazley responded that it "cannot have any coverage obligations until the underlying layer is exhausted." (Docket Entry No. 57 at ¶ 40).  AIG took the position that it had no duty under the Followed Policy to advance defense costs because the antitrust exclusion applied.  (*Id.* at ¶ 17).  Beazley concurred with AIG, stating that "coverage is not available for Foster Farms due to the antitrust exclusion." (*Id.* at ¶ 41).

Foster Farms then purchased an additional primary policy from AIG with a policy period of May 7, 2017, to May 7, 2018 (the "Non-Followed Policy").  (*Id.* at ¶ 18).  The Non-Followed Policy included a $5M sublimit covering antitrust claims and a $10M limit on director and officer coverage.  (*Id.*).  The Non-Followed Policy covers liability "arising from all Antitrust Claims," including "any Claim alleging, arising out of, based upon or attributable to, or in any way involving, either directly or indirectly, antitrust violations, including any violation of the Sherman Antitrust Act, the Clayton Act, the Robinson-Patman Act or any similar federal, state or local statutes or rules."  (*Id.* at ¶ 19).  The Non-Followed Policy contains the following exclusion ("Exclusion 4(d)") for claims:

> alleging, arising out of, based upon or attributable to the facts alleged, or to the same or Related Wrongful Act(s) alleged or contained in any claim which has been reported, or in any circumstances of which notice has been given, under any policy which this D&O Coverage Section is a  renewal or replacement of in whole or in part or which it may succeed in time[.]"

(Docket Entry No. 40-1 at 34).

5

In February 2018, AIG denied coverage under the Non-Followed Policy. (Docket Entry No. 57 at ¶ 20). According to AIG, Exclusion 4(d) precluded coverage for cases that were first noticed under the Followed Policy. (Docket Entry No. 59 at 24). AIG reiterated its position that there was no coverage under the Followed Policy because the antitrust exclusion applied. (*Id.*).

In May 2018, Foster Farms demanded mediation under the Followed and Non-Followed Policies' dispute resolution provisions. (Docket Entry No. 57 at ¶ 21). AIG responded by affirming its position that there was no coverage under the Non-Followed Policy. (*Id.* at ¶ 22). However, it offered to pay, under the Followed Policy, 25% of Foster Farms's defense costs in cases involving unjust enrichment claims—subject to an express reservation of rights, including the right to seek recoupment based on the antitrust exclusion. (*Id.*). Foster Farms rejected AIG's offer, reiterating its position that AIG was obligated to pay 100% of Foster Farms's defense costs under both the Followed and Non-Followed Policies. (*Id.* at ¶ 24).

In September 2018, AIG invoked the dispute resolution provisions of the Followed and Non-Followed Policies and demanded mediation. (*Id.* at ¶ 25). Following mediation, the parties reached a Settlement Agreement in April 2019. (*Id.* at ¶ 26). Under the Settlement Agreement, AIG agreed to pay 45% of Foster Farms's defense costs subject to a $5.65M cap. (Docket Entry No. 63 at 52). In exchange, Foster Farms released AIG and agreed that it had "no further obligation to defend or indemnify [*In re Broiler Chicken*] under the Policies other than as described in this [Settlement Agreement]." (*Id.* at 53).

E.  **This Lawsuit**

In December 2021, Beazley sued Foster Farms in the United States District Court for the Eastern District of California. (Docket Entry No. 1). Beazley seeks a declaratory judgment that it owes no duty to pay Foster Farms's defense costs under the Excess Policy because (1) the

antitrust exclusion applies to *In re Broiler Chicken*, and, even if the antitrust exclusion does not apply, (2) coverage has not been triggered because the limits of the Followed Policy have not been exhausted. (*Id.*). Foster Farms asserts counterclaims for (1) a mirror-image declaratory judgment, (2) breach of the Excess Policy, and (3) breach of the duty of good faith and fair dealing. (Docket Entry No. 8).

In March 2023, the parties cross-moved for summary judgment. (Docket Entry Nos. 38, 39). The parties filed responses and replies. (Docket Entry Nos. 44, 46, 49, 50). Beazley also filed objections to Foster Farms's summary judgment evidence and a request for judicial notice. (Docket Entry Nos. 49-1, 61).

In April 2024, the case was assigned to this court, which is temporarily performing judicial duties in the United States District Court for the Eastern District of California to ease the backlog in that overburdened district. (Docket Entry No. 73). In July 2024, the court heard argument on the cross-motions for summary judgment.

Based on the record, the briefing, oral argument, and the applicable law, summary judgment is granted for Beazley and denied for Foster Farms. The court denies Beazley's evidentiary objections and request for judicial notice as moot because the summary judgment ruling does not depend on the challenged evidence or the mathematical calculations that are the subject of the request for judicial notice.

## II.     The Legal Standards

### A.     The Rule 56 Standard

Summary judgment is appropriate if the evidence, when viewed in the light most favorable to the non-moving party, demonstrates "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a); *see also Galen v.*

*Cnty. of L.A.*, 477 F.3d 652, 658 (9th Cir. 2007). The moving party bears the initial burden of showing that there is no genuine issue of material fact and that he or she is entitled to prevail as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23, 106 S. Ct. 2548, 91 L.Ed.2d 265 (1986). If the moving party meets its burden, then the non-moving party "must make a showing sufficient to establish a genuine dispute of material fact regarding the existence of the essential elements of his case that he must prove at trial." *Galen*, 477 F.3d at 658. The court is "required to view the facts and draw reasonable inferences in the light most favorable to the [non-moving] party." *Scott v. Harris*, 550 U.S. 372, 378, 127 S. Ct. 1769, 167 L.Ed.2d 686 (2007).

### B. California Law on Insurance Policies and the Duty to Defend

The "ordinary rules" of contract interpretation apply to insurance contracts. *FlorExpo LLC v. Travelers Prop. Cas. Co. of Am.*, 524 F. Supp. 3d 1051, 1055 (S.D. Cal. 2021) (quoting *N. Am. Building Maint., Inc. v. Fireman's Fund Ins. Co.*, 137 Cal. App. 4th 627, 40 Cal. Rptr. 3d 468, 479 (2006)). The goal is "to give effect to the mutual intention of the parties as it existed at the time of contracting." CAL. CIV. CODE § 1636. If the contract is written, "the intention of the parties is to be ascertained from the writing alone, if possible." *Id.* § 1639; *see also Haynes v. Farmers Ins. Exch.*, 32 Cal. 4th 1198, 13 Cal. Rptr. 3d 68, 89 P.3d 381. 385 (2004). If the contractual language is "clear and explicit," then it governs. CAL. CIV. CODE § 1638; *see also Bank of the W. v. Superior Court*, 2 Cal. 4th 1254, 10 Cal. Rptr.2d 538, 833 P.2d 545, 551 (Cal. 1992); *Blackhawk Corp. v. Gotham Ins. Co.*, 54 Cal. App. 4th 1090, 63 Cal. Rptr. 2d 413, 418 (1997) ("[W]here the language of a contract is clear, we ascertain intent from the plain meaning of its terms and go no further."). But if the contract is "in any respect ambiguous or uncertain," it must be interpreted to protect the "objectively reasonable expectations of the insured." *N. Am. Bldg. Maint., Inc. v. Fireman's Fund Ins. Co.*, 137 Cal. App. 4th 627, 641, 40 Cal. Rptr. 3d 468, 479 (2006) (quotation marks and

8

citations omitted). To determine whether coverage is consistent with the insured's objectively reasonable expectations, the language must be interpreted "in context, with regard to its intended function in the policy." *Id.* The contract's words "are to be understood in their ordinary and popular sense . . . unless used by the parties in a technical sense, or unless a special meaning is given to them by usage." CAL. CIV. CODE § 1644; *see also MacKinnon v. Truck Ins. Exch.*, 31 Cal. 4th 635, 3 Cal. Rptr. 3d 228, 73 P.3d 1205, 1213 (2003).

"[A]ny limitation on the coverage provided by a liability insurance policy must be express and consistent with the reasonable expectations of the insured." *Hanover Ins. Co. v. Paul M. Zagaris, Inc.*, 714 Fed. App'x. 735, 737 (9th Cir. 2018) (quoting *Am. Safety Indem. Co. v. Admiral Ins. Co.*, 220 Cal. App. 4th 1, 4, 162 Cal.Rptr.3d 699 (2013)). "Doubts concerning the potential for coverage and the existence of [a] duty to defend are resolved in favor of the insured." *Id.* (quoting *Reg'l Steel Corp. v. Liberty Surplus Ins. Corp.*, 226 Cal. App. 4th 1377, 1389, 173 Cal.Rptr.3d 91 (2014)). "In an action seeking declaratory relief on the issue of the duty to defend, 'the insured must prove the existence of a potential for coverage, while the insurer must establish the absence of any such potential. In other words, the insured need only show that the underlying claim may fall within policy coverage; the insurer must prove it cannot.'" *Id.* (quoting *Montrose Chem. Corp. v. Super. Ct.*, 6 Cal. 4th 287, 300, 24 Cal.Rptr.2d 467, 861 P.2d 1153 (1993)). "In an action with potentially-covered claims and excluded claims, the insurer has a 'duty to defend the entire "mixed" action prophylactically, as an obligation imposed by law in support of the policy.'" *Id.* (quoting *Buss v. Super. Ct.*, 16 Cal. 4th 35, 48–49, 65 Cal.Rptr.2d 366, 939 P.2d 766 (1997)).

"[A] potential for coverage cannot be based on an unresolved dispute concerning a purely legal question or question of policy interpretation when the question is resolved favorably to the

insurer." *Century Transit Sys., Inc. v. Am. Empire Surplus Lines Ins. Co.*, 42 Cal. App. 4th 121, 126, 49 Cal. Rptr. 2d 567 (1996); *see also A-Mark Fin. Corp. v. CIGNA Prop. & Cas. Companies*, 34 Cal. App. 4th 1179, 1192, 40 Cal. Rptr. 2d 808 (1995) ("We know of no case suggesting that an insurer has a duty to defend where the only potential for liability turns on resolution of a legal question.") (quoting *State Farm Mut. Auto. Ins. Co. v. Longden*, 197 Cal. App. 3d 226, 233, 242 Cal. Rptr. 726 (Ct. App. 1987)).

### III. Analysis

#### A. The Antitrust Exclusion

Beazley argues that it owes Foster Farms no duty to pay defense costs because *In re Broiler Chicken* falls within the antitrust exclusion for "any actual or alleged violation of any law, whether statutory, regulatory or common law, respecting any of the following activities: antitrust, business competition, unfair trade practices or tortious interference in another's business or contractual relationships." (Docket Entry No. 40 at ¶ 10).

Foster Farms contends that the antitrust exclusion does not bar coverage because many of the cases consolidated in *In re Broiler Chicken* assert causes of action for unjust enrichment and violations of state consumer protection laws, and include allegations of fraud and false advertising. Foster Farms argues that these claims are not "respecting" "antitrust, business competition, unfair trade practices, or tortious interference." (Docket Entry No. 38 at 26). Foster Farms does not dispute that the antitrust exclusion applies to the Sherman Act claim and to claims under state antitrust statutes. Foster Farms correctly notes that the duty to defend under California law extends to cases presenting a potential duty to defend, not only an actual duty. Foster Farms asserts that Beazley "has an obligation to advance defense costs because all the Underlying Suits contain facts and allegations that potentially could give rise to a covered liability." (*Id.*).

Foster Farms's arguments are unpersuasive. As an initial matter, whether the antitrust exclusion applies to all the *In re Broiler Chicken* claims is a pure question of law. Whether *In re Broiler Chicken* is a "mixed" action subject to the duty to advance defense fees, or instead falls entirely outside the antitrust exclusion, turns on the language of the exclusion itself. Accordingly, Beazley's arguments based on a "potential" for coverage are unavailing. *See Century*, 42 Cal. App. 4th at 126.

Further, the unjust enrichment claims asserted by the indirect purchaser plaintiffs[4] are derivative of, and entirely dependent upon, the antitrust claims and underlying price-fixing allegations. The unjust enrichment allegations are as follows: "As a result of their unlawful conduct described above, Defendants have and will continued [*sic*] to be unjustly enriched by the receipt of unlawfully inflated prices and unlawful profits of Broilers. Under common law principles of unjust enrichment, Defendants should not be permitted to retain the benefits conferred on them by overpayments by Plaintiffs and members of the Classes[.]" (Docket Entry No. 40-2 at 491). Apart from the allegations that Foster Farms conspired with other chicken producers to fix the prices of broiler chickens, causing the plaintiffs to pay inflated prices, there is no basis for an unjust enrichment claim. The plaintiffs cannot prevail on their unjust enrichment claims if they do not prevail on their antitrust claims.

The dependency of the unjust enrichment claims on the antitrust claims distinguishes this case from *Hanover Insurance Company v. Paul M. Zagaris, Inc.*, on which Foster Farms relies. 714 Fed. App'x. 735, 737 (9th Cir. 2018). In that case, the Ninth Circuit held that an exclusion for claims "arising out of . . . deceptive business practices" did not apply to claims for breach of

---

[4] The parties agree that the indirect purchaser plaintiffs' second amended complaint is fairly representative of all unjust enrichment claims asserted in *In re Broiler Chicken*.

fiduciary duty and constructive fraud based on the insured's alleged omissions regarding kickbacks:

> The district court correctly reasoned that the *Spracher* causes of action for breach of fiduciary duty and constructive fraud do not necessarily "arise out of ... deceptive business practices" such that Exclusion 11 certainly excludes coverage for them. These causes of action rely on the Insureds' omissions—whether or not fraudulent or deceptive. As the district court explained, it remains possible that the Insureds could be found not to have engaged in deceptive business practices even if they are found to have breached their fiduciary duties by failing to disclose their interest in the sales of the NHD reports, or engaged in constructive fraud via the same omission. Hanover has not met its burden to demonstrate that there is no possible scenario in which the claims in the Spracher Lawsuit fall within the Policy.

In other words, the allegations underlying the breach of fiduciary duty and constructive fraud claims, if proven, would not necessarily establish the excluded cause of action for deceptive business practices. Here, by contrast, the allegations underlying the unjust enrichment claims are identical to the allegations underlying the excluded antitrust causes of action.

The claims for violations of state consumer protection laws are, in this respect, no different from the unjust enrichment claims. The indirect purchaser plaintiffs assert violations of a variety of state consumer protection statutes. A representative sample of those allegations is that: "Defendants entered into a contract, combination, or conspiracy between two or more persons in restraint of, or to monopolize, trade or commerce in the Broiler market," and "established, maintained, or used a monopoly, or attempted to establish a monopoly, of trade or commerce in the Relevant Markets[.]" (Docket Entry No. 41-1 at 264). These are the same as the allegations underlying the claims for violations of the Sherman Act and state antitrust statutes. The consumer protection claims fall within the antitrust exclusion.[5]

---

[5] There is no merit to Foster Farms's objection that "[a]s a matter of law, many of the[] [consumer protection] causes of action cannot be based on violations of antitrust laws." (Docket Entry No. 44 at 21). Whether a claim is meritorious is irrelevant to determining whether there is a duty to defend. *Cf. Big 5 Sporting Goods Corp. v. Zurich Am. Ins. Co.*, 635 Fed. App'x. 351, 353 (9th Cir. 2015) ("An insurer may have a duty to defend against a claim that is meritless or frivolous, i.e. 'a loser,' but not against a claim that

Finally, Foster Farms argues that the *In re Broiler Chicken* complaints "assert allegations relating to alleged misrepresentations, fraudulent conduct, and false advertising or marketing." (Docket Entry No. 38-1 at ¶ 16). Foster Farms contends that these allegations are distinct from the antitrust claims and not subject to the antitrust exclusion. The court disagrees.

The fraud allegations are exclusively allegations that the defendants omitted, concealed, and misrepresented material facts with the intent of hiding from the public their alleged conspiracy to fix the price of broiler chickens. Most of the fraud allegations do not support the elements of a substantive offense, but rather negate an anticipated statute of limitations defense based on the discovery rule. (Docket Entry No. 40-2 at 425–34). The plaintiffs allege that they "could not have discovered the alleged conspiracy at an earlier date by the exercise of reasonable diligence because of the deceptive practices and techniques of secrecy employed by Defendants and all of their co-conspirators to conceal their combination." (*Id.* at 428–29).

Apart from the fraud allegations in support of the discovery rule, the indirect purchaser plaintiffs allege, in support of claims for violations of various state deceptive trade practices statutes, that the "[d]efendants' conduct misled consumers, withheld material facts, and resulted in material misrepresentations to Plaintiffs and members of the Classes." (*Id.* at 463). The only fraud allegation specific to Foster Farms is that it "blamed the ethanol mandate" and rising corn prices for a "delayed [] expansion[,]" when the alleged cause was a conspiracy to artificially constrain the supply of broiler chickens. (*Id.* at 431). The alleged injury underlying these deceptive trade practices claims is indistinct from the antitrust injury on which the entire action is

---

is plainly not covered because of an exclusion."); *N. Am. Bldg. Maint., Inc. v. Fireman's Fund Ins. Co.*, 137 Cal. App. 4th 627, 637, 40 Cal. Rptr. 3d 468, 475 (2006) ("The insurer must defend any claim that would be covered if it were true, even if in fact it is groundless, false, or fraudulent."). Rather, what matters is whether the consumer protection claims, whether meritorious or not, are pleaded as factually and legally independent from the excluded antitrust claims. *See Hanover*, 714 Fed. App'x. at 737.

based—increased prices due to fixing the price of broiler chickens. Once again, without liability on the antitrust claims, there could be no liability on the deceptive trade practices claims.

Foster Farms argues that the antitrust exclusion is ambiguous because there is broader exclusionary language in other provisions of the Followed Policy. For example, one exclusion applies to claims:

> alleging, arising out of, based upon, attributable to, or in any way involving, directly or indirectly: (1) the actual, alleged or threatened discharge, dispersal, release or escape of Pollutants; or (2) any direction or request to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize Pollutants; provided, however, this exclusion shall not apply to non-indemnifiable Loss arising from a Claim alleging damage to a Plan, other than non-indemnifiable Loss constituting Cleanup Costs.

(Docket Entry No. 40-1 at 51).

The court agrees that the antitrust exclusion could have been drafted to apply more clearly to the unjust enrichment, consumer protection, and deceptive trade practices claims asserted in *In re Broiler Chicken*. Had the exclusion applied to claims "alleging, arising out of, based upon, attributable to, or in any way involving, directly or indirectly, anticompetitive conduct," there would likely have been no need for this lawsuit. Foster Farms correctly notes that several of the cases on which Beazley relies featured broader antitrust exclusions than the one at issue here. *See, e.g.*, *The Saint Consulting Group, Inc. v. Endurance Am. Specialty Ins. Company, Inc.*, 699 F.3d 544 (5th Cir. 2012); *Major League Soccer, L.L.C. v. Fed. Ins. Co.*, 45 Misc. 3d 1211(A), 3 N.Y.S.3d 285 (N.Y. Sup. 2014). Nonetheless, ambiguity does not exist simply because a contract could be clearer. *City of Carlsbad v. Ins. Co. of State of Pennsylvania*, 180 Cal. App. 4th 176, 182, 102 Cal. Rptr. 3d 535, 539 (2009) ("[J]ust because language could be more precise or explicit does not mean it is ambiguous.").

The court finds no ambiguity as to whether the antitrust exclusion applies to causes of action that, while not designated as "antitrust causes of action," are based entirely on allegations

of anticompetitive conduct. This interpretation is consistent with the instruction of California courts that the allegations in the complaint, not the "labels given to the causes of action," determine the duty to defend. *See Ghukasian v. Aegis Sec. Ins. Co.*, 78 Cal. App. 5th 270, 272, 292 Cal. Rptr. 3d 923, 924 (2022), *reh'g denied* (Apr. 22, 2022); *Barnett v. Fireman's Fund Ins. Co.*, 90 Cal. App. 4th 500, 510, 108 Cal. Rptr. 2d 657, 663 (2001).[6]

For these reasons, the court holds that the antitrust exclusion applies to all claims in *In re Broiler Chicken*, and that Beazley has no duty to pay Foster Farms's defense costs.[7]

### B. Exhaustion of the Followed Policy

Even if the antitrust exclusion does not apply to all the claims in *In re Broiler Chicken*, Beazley would still owe no duty to advance Foster Farms's defense costs because the primary layer of insurance provided by AIG has not been exhausted.

The Followed Policy—which is the primary layer of insurance provided by AIG—has a $10M limit of liability. Coverage under the Excess Policy is not triggered unless and until the limits of the Followed Policy "have been exhausted through payments by, or on behalf of, or in place of the insurers of the Underlying Insurance [AIG] of amounts covered under the Underlying

---

[6] *See also Uhrich v. State Farm Fire & Cas. Co.*, 109 Cal.App.4th 598, 611 (2003) ("[C]laims do not exist in the ether, they consist of pleaded allegations coupled with extrinsic facts. That is what defines the insurer's coverage duties, not the label chosen by the pleader."); *Golden Eagle Ins. Corp. v. Cen-Fed, Ltd.*, 148 Cal.App.4th 976, 989 (2007) ("[C]overage . . . does not depend on the form of the action or the legal theories asserted by claimant. Rather, coverage is determined by the nature of the loss . . . and the risk that caused the loss[.]").

[7] The court rejects Foster Farms's argument that "AIG's recognition that the Antitrust Exclusion does not bar coverage for all Claims in the Underlying Suits is highly probative, if not dispositive, of Beazley's contractually identical coverage obligations." (Docket Entry No. 38 at 29). An excess carrier is not bound by the primary insurer's interpretation of an underlying policy even when the excess policy incorporates the terms of the underlying policy. *See Shy v. Ins. Co. of the State of Pennsylvania*, 528 Fed. App'x. 752, 754 (9th Cir. 2013) ("ISOP is not bound by Gemini's determination that there was coverage. ISOP's insurance policy is a following-form policy, which means that it incorporates the terms of the underlying policy. . . . Nothing in the policy says that ISOP is bound by Gemini's coverage decision. We conclude that ISOP is bound by the terms of Gemini's policy but not Gemini's coverage decision.") (citations omitted).

Insurance." (Docket Entry No. 40 at ¶¶ 2–4). Put simply, Beazley is obligated to pay only if more than $10M of covered defense costs have been paid under the Followed Policy.

Foster Farms admits that AIG has paid only $5.65M of its *In re Broiler Chicken* defense costs, which is the cap that Foster Farms and AIG agreed to in their Settlement Agreement. (Docket Entry No. 63 at 52). But Foster Farms argues that the Followed Policy has been exhausted by additional payments it has made "on behalf of, or in place of" AIG.

The question is whether defense costs paid by Foster Farms in excess of AIG's capped contribution are properly considered payments of "amounts covered" "on behalf of" or "in place of" AIG. (Docket Entry No. 40 at ¶¶ 2–4). The court holds that they are not. Foster Farms's payments above the $5.65M cap are not "amounts covered" under the Followed Policy because Foster Farms agreed in the Settlement Agreement that AIG "has no further obligation to defend or indemnify [*In re Broiler Chicken*] under the Policies other than as described in this [Settlement Agreement]." (Docket Entry No. 63 at 53). *See U. S. Fire Ins. Co. v. Lay*, 577 F.2d 421, 423 (7th Cir. 1978) (holding that the primary carrier "was effectively released from all liability in excess of $70,000 by the settlement agreement. . . . Because [the primary carrier] was not and could not be liable for any amount in excess of [the] $100,000 [primary insurance limit], the obligation of the excess carrier . . . never arose."). And the excess payments were not "on behalf of" or "in place of" AIG because that policy language presupposes AIG's ultimate liability for the payments. *Cf. Rummel v. Lexington Ins. Co.*, 1997-NMSC-041, ¶ 29, 123 N.M. 752, 760, 945 P.2d 970, 978 (interpreting the policy's definition of "loss" to include "sums paid or payable in settlement of claims for which the Insured is liable" to "explicitly provide[] for claims that the underlying insurers are required to pay, but which have not, at present, been paid"). Interpreting the language otherwise, to permit Foster Farms to exhaust the underlying coverage limits with payments it

16

agreed AIG did not owe, would be contrary to both the plain language and the nature of excess insurance policies. *See Qualcomm, Inc. v. Certain Underwriters at Lloyd's, London*, 161 Cal. App. 4th 184, 193–94, 73 Cal. Rptr. 3d 770, 777 (2008) ("Our assessment of the policy language must be made in the context of the nature of Underwriters' policy as an excess insurance policy. . . . Under these circumstances, Qualcomm's objectively reasonable expectations as the insured were that primary insurance would have to be exhausted before excess coverage would attach.") (citations omitted).

Foster Farms's payments in excess of the $5.65M paid by AIG did not exhaust the limits of the Followed Policy and did not trigger Beazley's obligations as an excess carrier.

## IV.  Conclusion

Beazley's motion for summary judgment is granted.  (Docket Entry No. 39).  Foster Farms's motion for summary judgment is denied.  (Docket Entry No. 38).  Beazley must submit a proposed final judgment by **September 20, 2024**.

SIGNED on August 22, 2024, at Houston, Texas.

                                                              Lee H. Rosenthal
                                                              United States District Judge